Good morning, Your Honors. Edward Silverman on behalf of Appellant Alejandro Diaz. My colleague to my left is Anthony Gaston, who represents Appellant Martha Barba de la Torre. And with the Court's permission, I would like to speak approximately 11 minutes. He would like to speak for two, and we would like to reserve three for rebuttal. Well, you're going to have to watch that yourselves, because yesterday we started asking questions, and the one in your position took all the other guys' time, and he was mad, and he asked me to please help him out. So I did a little bit, but not much. So you're going to have to work on that yourselves. I appreciate that. In this case, we have an amended consolidated judgment referred to as the ACJ in the briefs, and it deals with two separate adversary proceedings. One is what we call the 04 action, and that dealt with fraudulent transfer and recovery under Sections 544 and 550 of the Bankruptcy Code. The second proceeding is under Sections 549 for a post-petition transfer and 550 for recovery, and that's what we refer to as the 06 action. And please recall that in March 2013, the parties filed briefs following this Court's opinion in Enright-Bellingham, and that case was argued before the U.S. Supreme Court on the specific issue that would be applicable here as to waiver, and we would ask that the Court wait for the Supreme Court's opinion. Well, if we could, really the only issue that that really deals with is the fraudulent transaction, right? That's correct. So if we were to decide the case based on instead of the fraudulent transaction, the post-petition transfer, wouldn't seem to me we'd need to wait at all, would we? If the Court does not rule on or dismisses the 544 action, yes, Your Honor, I agree. Very briefly, some of the facts that are most important to this case are based on Article 27 of the Constitution of Mexico, which forbids ownership interest in coastal property by foreigners. The only interest, the only property that was at issue in either of the adversary proceedings is the beneficial interest in the property, and that's set up by way of a Fideicomiso Trust with a Mexican bank trustee, but only the beneficial interest was property of the debtor at the time he filed bankruptcy, the debtor's Eisenhower. Eisenhower transferred that property to H&G, and then H&G transferred that beneficial interest back to the Mexican bank trustee, who then extinguished the trust and transferred fee title, title in U.S. terms, fee title, to Alex alone. So we know those facts. So what issue are you really going to concentrate on? In both proceedings. I'll be fair. You're in front of three who kind of know what this is all about. Okay. So get to your issue. You've got, I mean, I've got a lot of issues here, and I wondered which one you're really going to give me the business about today. The ultimate recovery in both of the actions is under Section 550 of the Bankruptcy Code, and that's for recovery of the property of the estate. The property of the estate was the beneficial interest. So it is a recovery of property which was already in the state but was petitioned out thereafter, right? At the time of the judgment, yeah, the property, that interest no longer existed, and the property was held, the title of the property was held at that point. I'm just trying to make sure that we keep you on point here. This isn't, we're not talking about any kind of a situation where the property wasn't in the estate in the first place. That's correct. We're talking about after having been in the estate and subject to the bankruptcy court and the bankruptcy proceedings, it was transferred. That's correct. But our position is that the bankruptcy court exceeded its jurisdiction in ordering the creation of a new Fideicomiso Trust and a transfer of the beneficial interest since that is a local action, not a transitory action, because it deals with the in rem jurisdiction of the property in Mexico. This is not like Fall v. Easton or Brady v. Brown. In both of those cases, the claims were transitory actions. In Fall v. Easton, it was a marital dissolution action in the state of Washington. In Brady v. Brown, it was a state court fraud claim. The judgment was entered or about to be entered in favor of one of the parties in each of those actions, and the court fashioned a remedy to effect the judgment. Those were transitory actions as opposed to this one that is for recovery of a property interest that needed to be created in Mexico and transferred in Mexico. Well, in effect, we have 28 U.S.C. 1334E that gives the court jurisdiction over all property wherever located of the debtor at the commencement of the case and of the property of the estate, don't we? Yes. And if we have that, then it seems to me they have then jurisdiction over that property. That property of the estate no longer existed, Your Honor. Well, it's a matter of whether it existed. What I'm trying to determine is if we once have the property in the estate itself, then the ability of the bankruptcy court to go find it or go find what it is or go find where it was or go find if it existed is really something 1334E gives it a right to do. Well, I believe 1334E is a jurisdictional statute. Yeah, it is for the bankruptcy court. But sections 544, 549, and especially 550 are specific statutes under which the relief was sought, and those statutes should not be applied extraterritorially. Well, if we're going to extraterritorial, I guess I'm trying to figure out again why doesn't 1334E control? Even if it was property of the estate at the time? I mean, if the bankruptcy court once gets jurisdiction over it, it seems to me 1334E gives it a right to go get it wherever it is. But it doesn't exist, Your Honor, until after 550 recovers it. Then it becomes property of the estate. Well, I appreciate that you want to give it a different thought process in order to get around, but the bottom line is if we got a 1334E property, what happens with it to try to get it out of the estate or out of being able to be controlled by the bankruptcy court is what we've given the bankruptcy court the jurisdiction to ferret out and go find it. Well, I don't mind taking the next step, Your Honor, and arguing that 1334 should not be applied extraterritorial either. Under Aramco, our Supreme Court has instructed that if a statute is to be applied extraterritorially, the grant of that authority must be expressed and must be specific. And just by saying any property of the estate is not an indication that Congress intended it to be applied outside the jurisdiction of the United States. I thought we held just the opposite in Inouye Simon. Simon dealt with a situation, a declaratory relief action, where property of the estate did exist outside the jurisdiction of the country, and the court was asked to determine whether it had authority over that property. We don't have that situation here, Your Honor. The property of the estate does not exist. The judgment here required Alex and Martha to go recreate that property. They had to undo transactions, set up a new trust, set up a new beneficial interest, all under the laws of Mexico, in Mexico. In the Maxwell case, the court held that a 547 preference could not be applied extraterritorially. And in the Midland case, the court held that the 548 fraudulent conveyance, which is very similar to the 544 action here, one's federal law, one's state law, and 550 could not be applied extraterritorially. Well, I appreciate that you want to throw fraudulent conveyance in there and give me a fraudulent conveyance case to look at. And I've looked at the cases you've now suggested. Are those the controlling cases in your mind? I mean, I'm not sure your argument goes where they're going. I'm not sure they can ñ I don't see that they control my decision in this particular case. They're not binding authority, if that's Your Honor's question. No. I said that, and I expect you could say you're out to lunch. It is. And now you've agreed with me on that. So, therefore, again, I don't think the fraudulent conveyance case is at all helpful because I'm not looking at this as a fraudulent conveyance action. If I'm going to keep myself from waiting for the Supreme Court to do something, it seems to me I've got to look at the transfer. Okay. And I've got to look at the jurisdiction for the transfer, and I've got to look at what 1334E says, and that's why I'm giving you the questions. Thank you. Then again, our position is that even though the language is any property of this state that is not a specific directive from Congress that the statute can be applied extraterritorially. What would they need to say to be specific? That it can be applied outside the jurisdiction of the United States. Oh, I see. And I believe that's what ARAMCO holds. It must state so either in the statute itself, in the legislative history, or elsewhere. And here we have Section 550, the recovery statute. We want to look at what Congress has said. Congress says you may recover the property or the cash equivalent. And while it's not direct language from Congress, Congress has given an alternative that doesn't offend application of the statute extraterritorially. Alex and Martha could have been told to pay the money judgment, and later on in the record they agreed to, but the court would not allow it. Can I ask you just your answer to Chet Smith's question at the outset? Why don't you think we need to wait for the Supreme Court's decision in the executive benefits case to deal with the post-petition transfer? I apologize if that's the Court's understanding. No, if the Court is going to deal with the 544 claim, our request is to please wait for the Supreme Court. If the Court is only going to base its decision on the post-petition transfer. That's what I just asked. Yeah, there's no need to wait. Why? That's what I'm asking, why? Why is there no need to wait? Because you don't think the Supreme Court's rationale, if it says that the bankruptcy court didn't have jurisdiction or authority to enter a final judgment with respect to the fraudulent transfer action, you don't think the rationale would apply? It might. Based on the language in this Court's opinion in Bellingham, though, I don't see. This Court's opinion in Bellingham does not contain language that appellants believe would apply to the post-petition transfer. Hasn't the Seventh Circuit already extended that rationale? Absolutely. Okay. And that is why we ask that the Court wait for the Supreme Court's opinion in the event it does. I'm interested in your answer to his question because it seems contrary to mine. Well, I apologize, Dennis. My statement, Judge Watford, was based on this Court's opinion in Bellingham. Right. I do not see anything in this Court's opinion in Bellingham. I'm talking about the Supreme Court's decision. Well, of course, I don't know what it will say at a minute. Right. Please wait. I'm just surprised you're not saying we need to wait across the board. Fine.  Please wait. Well, let's question you a little bit about this. Please, Ray. It seems to me that a post-petition transfer claim is more a public right than a private right. The claim arises under bankruptcy law because it certainly has to do with the jurisdiction of the property at the commencement of the case, and the claim is premised on recovering the property for the bankruptcy estate. So that's a public right, not a private right. Why have I got to wait for what we do with a fraudulent transaction? And that's what I based my original answer on. But as Judge Watford said, we don't know what the Supreme Court is going to say. Well, the problem is that you can't resolve the post-petition transfer claim unless you resolve the alter ego issue, and that's what the Seventh Circuit has said is, in fact, a private right that the Bankruptcy Court doesn't have authority to enter final judgment on. Right? The alter ego, yes. Yes.  Well, but just a minute. If we really talk about the alter ego, and it seems like I'm arguing with my colleague, and you're just getting the questions, but really I understand that we're going to talk about an application of alter ego of Nevada law. But to me, and I guess you can explain why, the subsidiary resolution of a state law question is very different from a claim premised entirely on state law. Well, the 06 action is premised on alter ego. You don't have a post-petition. Well, but I understand it's a resolution of a state law question because all the alter ego questions are state law, which we kind of found yesterday. But this is different. This isn't a claim premised entirely on the state law. Not entirely, but certainly significantly. I mean, well, OK. And that's. And then that's the best of being with Judge Walker. That's the reason to wait for the Supreme Court and to see what they say. Given this, just to be clear, I just wanted to know what your position was, because you guys have had to wait a long time to get even this far. And now the prospect of waiting, you know what, four more months. I mean, but you're it sounds like you're OK with that. If it's not like you're up here, please, please, please decide this case now and forget about the Supreme Court. That's not what I mean. No. To the contrary, we would appreciate waiting for the Supreme Court. And if necessary, we'd be glad to submit a supplemental letter. I don't think we need a supplemental. I understand, Your Honor. My time is. I think we've got this case pretty well under control. You've filed a lot. Briefed and briefed and briefed. I think we're going to terminate it after this argument. That's what I think. I would like to let my colleagues. I was just quiet while my colleagues discussed. But you. I would like to let my colleagues speak and save the minute or two for rebuttal, please. OK. Thank you. Now we eat right into your stuff. He's only got a minute, 10 to go. Well, I'll go. And he's in. He's in the deficit spending mode. I'll give you a minute and 10. I'll go very quickly, Your Honor. Tony Gaston for Martha Barber de la Torre. She's the mother of Alex Diaz. The point that I would like to make, first of all, is that the findings of fact and conclusions of law filed by the court found that my client, A, had nothing to do with the underlying negotiations of the transaction. B, was seriously ill at the time the negotiations with Eisenhower took place and relied entirely on Alex, her son, and Attorney Sanchez to do the due diligence. The second point. So are you saying that the bankruptcy court then clearly erred in finding that she purchased the villa in bad faith? Yes, I am. Yes, I am. So you understand, then, it is clear error standard of review? Yes. And so I guess I'm trying to figure out how you can say it's a clear error when she was charged with her attorney's knowledge of the red flags that were in the situation and even applying an objective good faith standard, a reasonably diligent person in her position would have been aware of the red flags. How are you going to respond to that? I think that finding was based on a triple canopy of implied knowledge. First, that the attorney that they hired should I'm not really asking you to argue the facts, Counselor, because the facts won't convince me under clear error. What law do you have to cite to me to suggest that the district court clearly erred? Because if you're just going to give me facts, that's good for a jury, but it's not good for me. I have to give the district court some deference. I understand. I understand. I'm not prepared to cite a case to that effect, but the findings there was no finding of agency between my client and either her son or the attorney in this matter. No finding that she had any conversations with them. And we believe that the imputation, if you will, of knowledge to her was absolutely incorrect. Okay. It was clearly. Thank you. Clearly. We've heard your argument. Okay. And we have heard your argument. I think I've given you more time than allotted, so I've got to turn it over to the gentleman. Okay. Thank you. Good morning, Your Honors. My name is Ali Majdahi, appearing on behalf of the affilee. I'd like to introduce my very able colleague, Janet Gertz, who will be arguing the sanctions matter, and my two other colleagues, Brian Vion and Allison Rago, who have helped us. If it please the Court, I would like to focus my comments on the post-petition transfer claim. Do you want to answer my good colleague Judge Watford's question? Should we wait? Do we need to wait? Your Honor, there's no reason to wait on either of these claims, but not waiting on the post-petition claim is even more compelling. And the reason why I say that, Your Honor, is that the able district court judge in this case not only wrote a beautiful opinion, but he also made the observation that if I were to ---- Do you want to appear in front of him again? I'm wondering if you don't. Beautiful, beautiful, well-raised, intelligent, good opinion. Go ahead. Your Honor, I'll leave that determination to this Court, but when I read that opinion, it does make an impression. Here's the point that he makes. Here's the point that the district court makes that I think is significant. And he says in a couple footnotes that if I were reviewing this de novo, I would hold the same as the bankruptcy court, which essentially means even if we take the ---- we question the bankruptcy court's opinion, at the end of the day, everyone agrees that the district court has jurisdiction. And if you treat the findings as a recommendation, what the district court is saying is if it came up to me, I would affirm. So on either of the counts, Your Honor, we believe that you can and should affirm. What is not disputed is most significant. They have not challenged any of the findings on substantive consolidation with respect to the post-petition claim. They have not challenged any of the findings with respect to alter ego. So what you have before you is a factual finding that is bulletproof. And based on that factual finding, there is no argument that the judgment was valid. Why? Because 549 expressly says that if you're aware of the bankruptcy, then you can't defend against the claim. And the findings of the bankruptcy court and affirmed by the district court are that the defendants below were aware of the bankruptcy. That in and of itself eliminates any possibility of them being able to defend against the post-petition claim. And frankly, we believe that all of the arguments on the merits are being made for purposes of defending against the appeals you will hear later. Because really once they agree with the facts, which they have, they have no valid legal argument. Well, let me ask you this. Why? You know, I mean, they have actually raised quite a few arguments that we've had to sort through. So I don't really agree with you that it's just for purposes of fending off the sanctions. I think they really do feel like an injustice was done because American law was applied to a transaction which should have been governed solely by Mexican law. So I guess my main question to you is, why wouldn't the bankruptcy court take the easier route and say, you know, I'm hearing all this noise about how I'm going to step on the toes of the Mexican government or these complicated issues of Mexican law. Why don't I just take the cash equivalent option that the bankruptcy estate is going to be made whole just the same. Why insist on the actual transfer of the beneficial interest in the property itself? Well, let me go to the root. What we have at its root is a claim for wrongful taking of property. Wrongful taking of property is at the root of this claim. And because of that, we even go so far as to say when someone has property that is wrongfully in their possession, then they have the burden of good faith. I mean, that's the reason why we switch the burden on them. So property wrongfully taken is something that is core to the whole bankruptcy system, because that bankruptcy system is designed to protect the property so that legitimate creditors get that property. And the reason why the code is crafted so that you have the choice as to either getting the property or the monetary value is because property is unique. And when property is unique, the code allows you to get the property back. So you're arguing that legal damages are insufficient in this particular matter. I'm arguing that as a practical matter, as a legal matter, the statute gives us the choice. Right. And the statutory underpinning is sound. I also want to appeal to common sense, which is all this argument about this violates Mexican law and all that is all aggressive argument. Because really, when you look at it, this property was in a Fido Camiso trust when the Lonnie Trust owned it. It was, again, in a Fido Camiso trust when Eisenhower owned it. It was, again, in a Fido Camiso trust when H&G owned it. So how could it be that all those folks held it in trust and it was perfectly okay under Mexican law? Now, suddenly, it becomes violative of Mexican law. Now, I would suggest to you that they would have a very difficult argument establishing good faith if they were to say, oh, all those prior transfers were violative of Mexican law. They didn't say that. They couldn't. So it puts them in a box. And so that's why they don't talk about any of those transfers. And the only impediments that have been created here are really those that have been created by the other side. And ultimately, what happened to those other transfers, of course, were all voluntary transfers. They argue, of course, that this one is not in any way that Mr. Diaz did not for one second want to execute this and only did it because he was coerced into doing so by the contempt sanctions that were imposed. So why doesn't that draw a distinction just for purposes of Mexican law? No, I mean, that is a distinction. But it's a distinction that makes no difference because, again, at its core, what the court is doing is issuing an order and a remedy directed at the individual. No court here made an adjudication about title to property. All the judge did was direct Mr. Diaz to sign and his mother to sign a document. That's all that was done. That is a voluntary act, the signing. Now, they want to try to make the argument that somehow the fact that there is an order directing them to do that is illegal. But we know that doesn't really make common sense because the rule of law anywhere in the court at the end of the day is based on a court being able to issue an order against parties, whether it's here in Mexico, anywhere. If you deprive a court of the ability to issue an order against any party and be able to say, well, that creates an involuntary act, you would have a system that simply would not work. That's why we disagree with their characterization that somehow an order converts this into an illegal act. I'd be happy to answer any questions your honors may have. But I come back to the fact that none of the factual findings here have been questioned. They have the burden of proof on good faith, which makes it even more difficult to make the challenge that they have had the wisdom not to make. Thank you very much. Thank you for your argument. Counselor, you and your colleague went over. I'm trying to figure out. I was thinking about giving him 30 seconds since you stole his time. But if he wants to give it to you, I'll give you the 30. Very quickly, we don't question the courts in personam jurisdiction. We question is that the order did require Alex and Martha to violate the laws of their country. These are Mexican citizens being ordered to set up a Mexican trust and transfer title to Mexican property that's controlled by the Mexican Constitution. As Judge Watford noted, at least one of the requirements is the transfer has to be voluntary. This was not a voluntary transfer. There are procedures that could have been put into place. There could have been a homologation action filed in order to. What was the standard review on the bankruptcy court's decision to decline to abstain from ordering the recovery under comedy? I believe that is abuse of discretion. But I contend they did the district court not put enough in its order to give reason for its use of discretion the way it did. You just agree, right? No, I don't agree with what they what the district court said. The court stated on the record what its basis was. And that's a further exception record at 141. I understand they Alex and Martha may have some problems in Mexico, but I don't really care about Mexican law. Close quote. That is the basis of her order. I understand. All right. Thank you. Thank you. All right. Then case 10 5 5 9 3 3 is hereby submitted. Then we'll move to cases 12 5 6 9 5 3 and 12 5 6 9 5 4. I understand in this particular matter that Kismet Acquisition will not make an appearance. Yes. All right. I could have done as a different, but I just call them in the order presented here. Thank you, Your Honor. May it please the court. David Nidre on behalf of the appellants. And with me today is David Newman, co-counsel. The issues presented by the brief were really two. One was the was the conduct of the attorneys in this case sanctionable. And two, was there a causal connection between their conduct and the harm? What happened? What happened in this case? Counselor, what did the district court do in this in these cases? Well, the district court reviewed the core email correspondence between the parties called before it. The attorneys involved in the case and what was the end result of what the court did? The court imposed sanctions and sanctions and said they were that it was OK to impose the sanctions. But send it back to the bank. I'm sorry.  Yes, Your Honor. That's the only one I've got in front of me is the district court, not the bankruptcy. OK. So the district court, they said generally what happened here is fine, but there's not enough. And so you've got to do some more findings, correct? Correct. So I have jurisdiction over a non-final order in a bankruptcy case when the appeal concerns primarily questions of law. Correct. What legal question is presented in your appeal? Two legal questions. One, whether there was whether as a matter of law, the conduct that was found by the bankruptcy court and used by the district court to find that it was that the sanctions were appropriate is sanctionable conduct. Isn't that a question of fact? I think it's a question of why, Your Honor, based on the case. What case says it is? I'm sorry. I mean, my worry is that what the district court did was they found as a matter of law, sanctionable conduct, but they haven't even said what the sanction is yet. Correct. In fact, they've sent it back to the bankruptcy court to do some more findings. Correct. And I don't want piecemeal review up here, so I'm saying to myself, pragmatically, why should I even decide this until I know what happens in the bankruptcy court? Because there's no question the bankruptcy court had the jurisdiction and the power and the precedent to impose sanctions. You're just suggesting that the conduct underneath it was not sanctionable, which is a question of fact and therefore not something out of here. The problem I have with that, Your Honor, is the in-ring media group case, which in which the appellant did exactly that. It was remanded back for a determination of the amount of sanctions, and when that matter was appealed to this court, the court refused to address the issue of whether the legal issue of whether the conduct was sanctionable, saying you should have taken appeal in the first instance from the district court's order. So you're using that case as kind of a foundation to jumpstart into getting into this case. Otherwise, you wouldn't be here. Well, Your Honor, I would have been happy. I mean, I'm trying to find a case that suggests that the sanction or the ability of the district court or the bankruptcy court to find a sanctionable conduct is at all questionable. It seems to me the law is clear. The bankruptcy court has the ability to impose sanctions for the conduct it finds sanctionable. I looked at the conduct they found sanctionable. It seems to me there's clear law that they can find sanction for, if you will, that which they found to be sanctionable. All we've got left is how much sanction. So what case are you saying they can't find legally sanctionable conduct for this? Well, first of all, the In Re Media Group, this seems like there's three levels. Is that your best case? No. Whether the conduct is sanctionable, I have the three Ninth Circuit cases all cited in the brief. Zaldivar versus City of Los Angeles, Woodrum versus Woodward County, and Hudson versus Moore Business Forms. And all of them say. All those in your brief, right? Yes. And all of them say the issue in this case is whether the bankruptcy court's legal conclusion that an attorney's conduct is sanctionable is reviewed de novo. It's a legal issue. And so now I couple that with the In Re Layton case, which says you can seek review of purely legal issues. And the In Re Media Group that tells me if you fail to take your appeal now, you could lose the right to make. So if I follow that, then how do you get that? Whether there's a causal link would be appropriate. OK. And Allstate versus. I looked at Allstate and I don't necessarily think they say that's a legal issue. OK. Well, I think I think that the issue is we have a causal whether there was a causal link based on undisputed facts. Undisputed facts. Yeah. I think that the with regard to the causal link, the causation between what was done and the same or the harm that was suffered are all undisputed facts. In other words, I'll give you an example. One of the incidents of alleged misconduct was objecting to the to the transfer documents. Well, all of the objections to the transfer documents were sent to opposing counsel before the deadline imposed by the court for the actual transfer of the property. And so if you say that there that you delayed the transfer of the property as a result of these objections and all of the conduct occurred well before the deadline, then there is no causal connection between the conduct and the delay. And so and it's a similar it's similar with each and every piece of alleged misconduct on the part of the attorneys. And so when I argue that it's a it's determinable as a matter of law, it's based on undisputed facts. I guess I think it's in some ways unfortunate that you don't have an opponent here because we don't have anyone to question on the other side. But I mean, I'm just looking at this more from the 30000 foot level. And I guess the conclusion I tentatively came to was that the sanction here could not be upheld unless we were prepared to say, as the bankruptcy court was, that the whole pursuit of this Amparo strategy in Mexico was just illegitimate and unethical from the get go. Right. And I think that's really the foundation of. So maybe I mean, just can you address that? Because I look at this and I see a lawyer who has a very difficult client. The client says, I'm I'm basically prepared to be held in contempt because I am not going to sign those documents. I want you to do everything you can to help me avoid having to do that and then being held in contempt. And, you know, it seems to me that the thrust of the bankruptcy court's order is that really the lawyers were required to withdraw from the representation at that point. I guess because otherwise, if they go forward, they're basically assisting him in violating the law. Well, two things. Number one, certainly, if if there's a reversal with regard to the main appeal, probably the sanctions would be moved or would would also be reversible. But I think that from that 30000 foot level, you also need to look at not only do we do it. You could find that the that the require that with regards to the law of the transfer of the property was was purely proper. And the objections were were ill founded and still found find that it's not sanctionable conduct because of the good faith belief on the part of the attorneys that this is an arguable issue. It's a complex issue, as this court can understand. And it's a it's a. Why was it in good faith, though? Because the bankruptcy court viewed this as. Wait a minute. I ordered your client to do something and you ran over to this other sovereign to try to set up basically this self-created obstacle to to complying with my judgment. Why? Why is that in good faith? Well, number one, we have a finding by the bankruptcy court at 38 of the excerpts of record. The court in its in its decision says the court recognizes Ms. Valdez honestly believes the transfer of order to in the AC ACJ will be overturned by a court in Mexico. So you have an express finding on the part of the court that there is an honest belief in in what she's arguing to the court. Number two, I let me just. Sure. Why? Maybe you can explain this because I don't get it. Why couldn't Mr. Diaz sign the documents and then still pursue Dampara? All the everything that they were advising him that he could pursue in Mexico. Well, I think that the one problem and this is Ms. Valdez testified to this repeatedly and before the court is one of the problems is that you have Mr. Diaz is out not only the property, but he's also out the million and a half. And so what Ms. Valdez is trying to do is protect both rights either or. Well, it's you know, we'll take either one. And so by signing the documents that are proposed by Kismet and in my opinion, the court found that the objections were meritorious. And in part because the documents overreached, they included a general power of attorney to opposing counsel to sign the documents on behalf of the Diaz. They included a transfer of the documents. I'm sorry, a transfer of the property to a third party that's not even mentioned in the judgment. And so the court found that those objections were meritorious. But the real reason why we were objecting to the documents is that it basically erased the 502 claim. It erased the argument that we're entitled to the money back. And so when Ms. Valdez was objecting to the documents, she was trying to preserve this money claim even if the property was lost. Let me step back, though, because the objections, the bankruptcy court eventually says if that's all that happened here, I wouldn't impose sanctions. It's really the deliberate pursuit of this Mexican legal action that's going to be set. The hope is that they could set that up as a barrier to complying with the judgment. And that's what I think drove the bankruptcy court's decision. I still haven't heard you. Right. Okay. So why couldn't he comply with a lawful judgment that was entered, sign the documents, and then if in fact Ms. Valdez's instincts were right that this was going to be invalid under Mexican law, then great. Pursue that in Mexico and eventually a Mexican court will vindicate your position. But at least you won't have had your client violate a lawfully entered judgment. Several answers, Your Honor. Some factual, some legal. And the reason I bring up the factual issues is because there's a clear and convincing. I'm assuming that there's a clear and convincing standard. And so the question is whether it meets that standard. But first of all, Ms. Valdez did not file the imparo. She did not. Mr. Diaz had separate Mexican counsel. She claimed no understanding of Mexican law. And her attitude basically was, look, you either need to sign the documents or I need to have a defense to a contempt proceeding. And so whatever you're going to do, get it done. You know, get the get aid. And what she was intending, there's question of whether it was an injunction or whether it was declaratory relief. But what she wanted was something in hand that said to the judge, this is questionable under Mexican law. And so that's why, for good or for bad, he did not sign the documents for this reason. Or sign the documents, which she was hopeful in making the objections that she would come find some middle ground where she could sign the documents for the transfer but still maintain the money claim, as you say. So what she was trying to do was create documents that allowed her to do just exactly what you said, transfer the property and then go forward with her claim, with her money claim. The other thing is, I think that I need to back up because everyone assumes in this case that a collateral attack of the bankruptcy court's order is somehow inappropriate. And I disagree with that. I cited a number of cases in my brief that said a bankruptcy order is just like any other order. It can be collaterally attacked. And, in fact, the example that I often use is sometimes we have people go to the state court and they don't get a result that they like and they walk across the street to the federal court and they try to initiate a lawsuit in order to sort of stop or undo the state court proceeding. There's nothing different about this. There's nothing sacrosanct about going to Mexico and seeking the protection of one's own government. I'm sorry, the red light went on. If I can further answer your question. Thank you very much for your argument. Appreciate it. Case 12-56953 and 12-56954, Valdez v. Kismet is submitted.
judges: Farris, Smith, Watford